# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN CRAIG HAYNES, | : | CIVIL NO.: 3:18-CV-01837 |
| Plaintiff, | : | |
| | : | (Judge Mannion) |
| v. | : | |
| | : | (Chief Magistrate Judge Schwab) |
| DR. IHUOMA NWACHUKWI, *et al.* | : | |
| Defendants. | : | |

## **REPORT AND RECOMMENDATION**

**I. Introduction.**

    During his incarceration in Pennsylvania, the plaintiff, John Craig Haynes ("Haynes"), was transferred to a prison in New Jersey. While in New Jersey, he injured his knee during a basketball game. In this lawsuit, Haynes brings claims against a number of defendants alleging that the defendants provided inadequate medical care for his knee injury both while he was in New Jersey and then when he was subsequently transferred back to Pennsylvania.

    The case is presently before us on two motions to dismiss. Defendants Gary Lanigan ("Lanigan"), Steven Johnson ("Johnson"), Dr. Ihuoma Nwachukwi ("Nwachukwi"), Umanuka Blessing ("Blessing"), and University Correctional

Health Care ("University Correctional")[1]—collectively referred to as the "New Jersey Defendants"—argue that all claims against them should be dismissed because this court does not have personal jurisdiction over them. Defendant Dr. Scott Prince ("Prince") argues that all claims against him should be dismissed because Haynes's complaint does not state a claim upon which relief may be granted.

In this report and recommendation, we address the New Jersey Defendants' motion to dismiss for lack of personal jurisdiction.[2] Ultimately, we conclude that this court does not have personal jurisdiction over the New Jersey Defendants and recommend that the court sever all claims against those defendants and transfer those claims to the United States District Court for the District of New Jersey.

**II. Background and Procedural History.**

Haynes initiated this case by filing a complaint in the Court of Common Pleas of Luzerne County, Pennsylvania, on July 20, 2018. *Doc. 1* at 1; *doc. 10* at 1. In his complaint, Haynes alleges that while he was incarcerated in Pennsylvania, he was transferred to a New Jersey prison. *Doc. 1* at 25. While

---

[1] The New Jersey Defendants assert in their motion that University Correctional Health Care is the correct name for the entity identified as "United Correction Health Care" in Haynes's complaint. *See doc. 2* at 1.
[2] We will address Prince's motion to dismiss in a separate report and recommendation.

incarcerated in New Jersey, Haynes allegedly suffered a knee injury during a basketball game on July 9, 2016. *Id.* As a result of that injury, Haynes was taken to the medical department of the prison, where he was examined by Blessing. *Id.* Blessing gave him an ACE bandage and some Motrin and placed him on a waiting list to receive an x-ray. *Id.* Haynes was then returned to his housing unit, at which point he requested "some type of brace or a cane to assist him in walking." *Id.* His claim, however, was "summarily denied." *Id.*

On July 12, 2016, Haynes was taking a shower when his "leg gave out on him." *Id.* Haynes attempted to grab a partition in the shower area to stop himself from falling, but the partition broke, causing Haynes to fall and sustain injuries. *Id.* A corrections officer in the prison witnessed Haynes's fall and called for emergency medical treatment. *Id.* at 26. Haynes was then taken to the medical department and examined by Nurse Berg, who referred him to Nwachukwi. *Id.* Nwachukwi did not examine Haynes and instead attempted to send Haynes back to his housing unit to await x-rays, at which point Berg allegedly advised Nwachukwi that doing so would be "imprudent." *Id.* Haynes was then admitted to the medical housing unit and given a tetanus shot for the cuts that he received from the broken partition in the shower area. *Id.*

On July 14, 2016, Haynes was given an x-ray, which indicated that he did not have any broken bones. *Id.* Because he was still experiencing swelling,

however, Haynes requested that Nwachukwi give him an MRI. *Id.* He also requested that he be taken to an outside hospital "because he could no longer lift his leg." *Id.* Haynes was then placed on a waiting list on July 18, 2019 to receive an MRI. *Id.*

On July 19, 2019, a member of the "S.I.D." staff visited Haynes in the medical housing unit. *Id.* The S.I.D. staff member informed Haynes that there was tension in the prison between members of the Aryan Brotherhood and members of the Muslim faith and that Haynes was allegedly implicated in the events giving rise to this tension. *Id.* Haynes told the S.I.D. staff member that he could not have been part of the events because he had been in the hospital during the relevant time period. *Id.* at 26-27. Haynes was later informed by Major Alaimo that he did not need to worry about his alleged role in this tension because Major Alaimo was "aware of the fact that it was not factual." *Id.* at 27.

On August 11, 2016, Haynes was given an MRI, and on August 12, 2016, he was placed on a waiting list for consultation with an orthopedic doctor. *Id.* Haynes then fell again on August 15, 2016, sustaining injuries to his right arm. *Id.* As a result of this fall, Haynes was again placed on a waiting list for an x-ray. *Id.* On August 16, 2016, Nwachukwi reviewed Haynes's MRI results and informed him that the orthopedic doctor would determine the appropriate course of treatment. *Id.* Haynes requested to see the MRI results himself, but Nwachukwi

4

refused that request. *Id.* Nwachukwi allegedly became upset at Haynes's request to see the MRI results and attempted to discharge Haynes from the infirmary. *Id.* at 27-28. Ultimately, however, Haynes was not discharged. *Id.* at 28. Haynes then filed two "inquiries" to the staff of the prison regarding Nwachukwi. *Id.*

On August 18, 2016, Haynes was taken to see Dr. Ahmar Shakir ("Shakir"), an orthopedic specialist. *Id.* Shakir placed Haynes on a waiting list for immediate surgery and ordered a brace to stabilize Haynes's knee. *Id.* Shakir allegedly stated that Haynes's knee was "3 to 4 inches from where it belonged" and that scar tissue had accumulated on the knee. *Id.* Shakir also allegedly informed Haynes that because of the delay in treatment, he might not be able to restore Haynes's knee "back to where it should have been." *Id.* Haynes subsequently received the knee brace that Shakir had ordered but was then "summarily ignored by all medical staff." *Id.*

Haynes was transferred back to Pennsylvania on August 25, 2016. *Id.* He was then taken to see three separate doctors on August 29, 2016, each of whom took x-rays and examined his knee. *Id.* All three doctors allegedly told Haynes that they would be unwilling to perform surgery "due to the delay in treatment of 7 weeks, and the seriousness of the injury." *Id.*

On September 6, 2016, Haynes saw an orthopedic specialist at Geisinger Medical Center who approved him for surgery and took additional x-rays. *Id.* at

29. He was then given corrective surgery on September 12, 2016, which allegedly resulted in him being "crippled" and "handicapped." *Id.*

Haynes's complaint names as defendants Nwachukwi, Blessing, Prince, Lanigan, Johnson, University Correctional, Lea Martin, John Wetzel, and three John Doe defendants. *Id.* at 24. He raises thirteen[3] counts in total, including claims of medical malpractice against Blessing, Nwachukwi, Prince, and Martin; claims of deliberate indifference to a serious medical need against Blessing and Nwachukwi; and claims of deliberate indifference to a serious medical need through supervisory liability against Lanigan, Johnson, Wetzel, University Correctional, and the John Doe defendants.

On September 18, 2018, the New Jersey Defendants removed this case from the Court of Common Pleas to this court.[4] *Doc. 1* at 1. The New Jersey

---

[3] The complaint erroneously names two separate counts as "Count Six." *See doc. 1* at 32, 36.

[4] It appears from the face of the New Jersey Defendants' motion that not all the defendants have consented to the removal of this case as required by 28 U.S.C. § 1446(b)(2)(A). Haynes, however, has not filed a motion to remand this case to state court. Since the failure of all defendants to consent to removal is a procedural defect, rather than a jurisdictional defect, it can be waived if a plaintiff does not file a timely motion to remand the case. *See Balazik v. Cty. of Dauphin*, 44 F.3d 209, 213 (3d Cir. 1995) ("Failure of all defendants to join is a 'defect in removal procedure' within the meaning of § 1447(c), but is not deemed to be jurisdictional."). *See also Alejandro v. Phila. Vision Ctr.*, 271 F. Supp. 3d 759, 761 n.2 (E.D. Pa. 2017) (citing *In re FMC Corp. Packaging Sys. Div.*, 208 F.3d 445, 451 (3d Cir. 2000); *Baldy v. First Niagara Pavilion, C.C.R.L., LLC*, 149 F. Supp. 3d 551, 556 (W.D. Pa. 2015) (citing *Balazik*, 44 F.3d at 213); *Cacoilo v. Sherwin-Williams Co.*, 902 F. Supp. 2d 511, 516 (D.N.J. 2012) (citing *Balazik*, 44

Defendants argued that removal was proper because Haynes brought claims of deliberate indifference to a serious medical need against Lanigan, Johnson, Nwachukwi, Blessing, and University Correctional, thus giving this court federal question jurisdiction. *Id.* at 3-5.

Shortly after removing the case, the New Jersey Defendants filed a motion to dismiss for lack of personal jurisdiction along with a supporting brief. *Docs. 2, 4*. In their motion, the New Jersey Defendants argue that this court may not exercise personal jurisdiction over them because all the events and transactions that gave rise to the case occurred in New Jersey and the New Jersey Defendants did not otherwise submit themselves to the personal jurisdiction of courts in Pennsylvania. *Doc. 2* ¶¶ 19-20.

Haynes filed a motion for extension of time in which to file a brief in opposition to the New Jersey Defendants' motion on October 22, 2018. *Doc. 6*. We granted Haynes's motion on October 24, 2018. *Doc. 8*. Haynes then filed a brief in opposition to the New Jersey Defendants' motion to dismiss on October 29, 2018. *Doc. 10*. Shortly thereafter, Haynes filed another motion for extension of time along with an additional brief. *Docs. 11-12*. We issued an order on November 9, 2018, in which we stated that we construed his motion as a motion

---

F.3d at 213 n.4). Accordingly, because Haynes has not raised the lack of unanimous consent to removal in a motion to remand, this court may not remand the case on that basis.

for leave to file a supplemental brief in opposition to the New Jersey Defendants' motion to dismiss. *Doc. 13* at 2-3. We granted that motion and accepted his second brief as a supplement to his first brief in opposition. *Id.* at 3. The New Jersey Defendants filed a reply brief to Haynes's first brief in opposition on November 12, 2018, and they then filed a reply brief to Haynes's supplemental brief on November 26, 2018. *Docs. 14-15*. We consider the New Jersey Defendants' motion to dismiss and the parties' arguments below.

## III. Discussion.

### A. Rule 12(b)(2) and Personal Jurisdiction Standards.

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for lack of personal jurisdiction. "Once a defendant challenges a court's exercise of personal jurisdiction over [the defendant], the plaintiff bears the burden of establishing personal jurisdiction." *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (citing *General Elec. Co. v. Detuz AG*, 270 F.3d 144, 150 (3d Cir. 2001)). "However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93,

97 (3d Cir. 2004) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)). "The plaintiff meets this burden and presents a prima facie case for the exercise of personal jurisdiction by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'" *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting *Provident Nat. Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)).

"A federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *D'Jamoos*, 566 F.3d at 102 (quoting *Provident Nat'l Bank*, 819 F.2d at 436). Therefore, since this court sits in the Commonwealth of Pennsylvania, our analysis is governed by Pennsylvania's long-arm statute, which allows courts to exercise personal jurisdiction "to the fullest extent allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b).

The United States Constitution allows a court to "exercise personal jurisdiction over an out-of-state defendant who has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (alteration in original) (quoting *International Shoe Co. v. State of*

*Washington, Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)).

There are two recognized types of personal jurisdiction—general jurisdiction and specific jurisdiction. *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007). "General jurisdiction exists when a defendant has maintained systematic and continuous contacts with the forum state." *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 & n.8 (1984)). "Specific jurisdiction exists when the claim arises from or relates to conduct purposely directed at the forum state." *Id.* (citing *Helicopteros Nacionales*, 466 U.S. at 414-15 & n.9). "The inquiry as to whether specific jurisdiction exists has three parts." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007). "First, the defendant must have 'purposefully directed [its] activities' at the forum." *Id.* (alteration in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "Second, the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (quoting *Helicopteros Nacionales*, 466 U.S. at 414). "And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comports with fair play and substantial justice.'" *Id.* (quoting *Burger King*, 471 U.S. at 476). "At the threshold, the defendant must have 'purposefully availed itself of the privilege of conducting activities within the forum.'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "And

contacts with a state's citizens that take place outside the state are not purposeful contacts with the state itself." *Id.* (citing *Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539, 542-43 (3d Cir. 1985)).

The New Jersey Defendants argue that this court cannot exercise personal jurisdiction over them because they are located in New Jersey and all events giving rise to the claims against them occurred in New Jersey. *Doc. 4* at 5. Haynes argues that because Pennsylvania and New Jersey are parties to the Interstate Corrections Compact ("ICC"),[5] *see* 61 Pa. Cons. Stat. § 7102, courts in Pennsylvania can effectively exercise general jurisdiction over the New Jersey Defendants. *See doc. 10* at 4-7. Haynes notes that "the states of Pennsylvania and New Jersey have 'continuously and systematically' conducted business under the contractual terms of the ICC." *Id.* at 6. Haynes also argues that the court may exercise personal jurisdiction over the New Jersey Defendants because of the diversity of citizenship between him and the New Jersey Defendants. *Doc. 12* at 6 ("Plaintiff also asserts Federal jurisdiction pursuant to 28 U.S.C. § 1332, diversity of citizenship."). In response to Haynes's argument, the New Jersey Defendants

---

[5] The ICC is an agreement between multiple states "which facilitates transfer and oversight of inmates who for some reason serve time in a state other than where sentenced." Wayne A. Logan, *"When Mercy Seasons Justice": Interstate Recognition of Ex-Offender Rights*, 49 U.C. Davis L. Rev. 1, 50 n.312 (2015). The ICC has been enacted into law by a majority of states. *See Trujillo v. Williams*, 465 F.3d 1210, 1218 n.8 (10th Cir. 2006).

assert that Pennsylvania and New Jersey being parties to the ICC is not sufficient to confer personal jurisdiction over the New Jersey Defendants. *Doc. 14* at 4-10.

### B. The ICC Is Not Sufficient to Establish Personal Jurisdiction.

As the New Jersey Defendants correctly point out, *doc. 14* at 4-7, the language of the ICC is silent as to personal jurisdiction. *See* § 7102. Haynes argues that subsections c, e, and f of the ICC establish that Pennsylvania courts may exercise personal jurisdiction. *Doc. 10* at 6-7. Subsection c provides in relevant part that "[i]nmates confined in an institution pursuant to the terms of [the ICC] shall at all times be subject to the jurisdiction of the sending state and may at any time be removed therefrom for transfer to a prison or other institution within the sending state . . . ." § 7102(c). While this subsection does mention jurisdiction, it clearly refers not to a court's personal jurisdiction over a defendant, but rather to the jurisdiction of the sending state to take the transferred inmate back from the receiving state. Subsection e provides in relevant part that "[t]he fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state." § 7102(e). This provision deals entirely with an inmate's rights upon transfer to the receiving state and is silent as to personal jurisdiction. Finally, subsection f provides in relevant part that "[a]ny hearing or

12

hearings to which an inmate confined pursuant to [the ICC] may be entitled by the laws of the sending state may be had before the appropriate authorities of the sending state," and that in conducting those hearings "the officials of the receiving state shall act solely as agents of the sending state and no final determination shall be made in any matter except by the appropriate officials of the sending state." § 7102(f). This provision allows prison officials in the receiving state to conduct hearings involving transferred prisoners as if they were agents of the sending state. Like subsections c and e, it is silent as to the ability of a court in the sending state to exercise personal jurisdiction over defendants in the receiving state. Thus, nothing in the language of the ICC can be construed as conferring personal jurisdiction over the New Jersey defendants.

Furthermore, while the Third Circuit has not directly addressed this issue, other circuit courts have determined that the ICC is not by itself a basis for asserting personal jurisdiction over out-of-state prison officials. *See Weldon v. Ramstad-Hvass*, 512 F. App'x 783, 788-89 (10th Cir. 2013); *Kinslow v. Pullara*, 538 F.3d 687, 691-93 (7th Cir. 2008); *Hannon v. Beard*, 524 F.3d 275, 281-82 (1st Cir. 2008); *Trujillo*, 465 F.3d at 1219; *Ali v. Dist. of Columbia*, 278 F.3d 1, 7 (D.C.

Cir. 2002).[6]  Accordingly, we find that the ICC is not by itself a sufficient basis for this court to exercise personal jurisdiction over the New Jersey Defendants.

### C. This Court May Not Assert Personal Jurisdiction over the New Jersey Defendants.

Since the ICC does not confer personal jurisdiction on this court, this court can only exercise personal jurisdiction if the New Jersey Defendants' have sufficient minimum contacts with Pennsylvania "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316.  That is not the case here.  There are no factual allegations from which we could infer that the New Jersey Defendants purposefully directed their activities towards Pennsylvania, nor are there any allegations from which we could infer that this suit arises out of the New Jersey Defendants' contacts with Pennsylvania.  Haynes's claims against the New Jersey Defendants are based entirely on the New Jersey Defendants' acts and omissions in New Jersey, during a time when Haynes was incarcerated in New Jersey.

The only alleged connection between Pennsylvania and the New Jersey Defendants is that Haynes was transferred from a Pennsylvania prison to a New

---

[6] The statutes at issue in these cases were essentially identical to the version of the ICC adopted in Pennsylvania.  *See* D.C. CODE § 24-1001; 730 ILL. COMP. STAT. 5 / 3-4-4; MASS. GEN. LAWS ch. 125, § 2-1; N.M. STAT. ANN. § 31-5-7; 61 PA. CONS. STAT. § 701; VA. CODE ANN. § 53.1-216; WYO. STAT. ANN. § 7-3-401.

Jersey prison. The fact that a prisoner was transferred between two states is not by itself sufficient for a court in one state to assert personal jurisdiction over prison defendants in the other state. *See Bailey-El v. Fed. Bureau of Prisons*, 246 F. App'x 105, 108 (3d Cir. 2007) (affirming district court's finding that court in New Jersey could not exercise personal jurisdiction over Virginia defendants where only fact supporting jurisdiction was that the inmate plaintiff had been transferred from Virginia to New Jersey); *Belt v. Fed. Bureau of Prisons*, 336 F. Supp. 3d 428, 434 (D.N.J. 2018) (finding no personal jurisdiction over Kentucky defendants where inmate plaintiff had been transferred from Kentucky to New Jersey and all events giving rise to the suit occurred in Kentucky); *Flanagan v. Shively*, 783 F. Supp. 922, 936 (M.D. Pa. 1992) (finding no personal jurisdiction over Texas defendants); *see also Weldon*, 512 F. App'x at 788; *Kinslow*, 538 F.3d at 693; *Hannon*, 524 F.3d at 281-82; *Trujillo*, 465 F.3d at 1220-21; *Ali*, 278 F.3d at 1.

Accordingly, because the New Jersey Defendants do not have sufficient minimum contacts with Pennsylvania, we find that this court may not exercise personal jurisdiction over them.[7]

---

[7] Haynes's additional argument that this court can exercise personal jurisdiction because of the diversity of citizenship between him and the New Jersey Defendants should be rejected out of hand because diversity of citizenship is an element to establish subject matter jurisdiction, rather than personal jurisdiction. *See* 28 U.S.C. § 1332.

### D. This Court Should Transfer the Case to the United States District Court for the District of New Jersey.

Having determined that this court cannot exercise personal jurisdiction over the New Jersey Defendants, the only remaining question is whether the claims against those defendants should be dismissed or transferred to another court. Haynes argues that upon a finding that the court lacks personal jurisdiction over the New Jersey Defendants, the court should "sever the claims against the New Jersey Defendants and transfer the claims to the District Court for Trenton[,] New Jersey." *Doc. 12* at 8. Haynes bases this argument on the court's power to transfer cases under 28 U.S.C. § 1404 and 28 U.S.C. § 1406. Section 1404 states "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404. Section 1406 states that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." The New Jersey Defendants assert that a transfer under § 1404 is improper because that section presupposes that the case has been brought in the correct forum. *Doc. 15* at 6 (citing *Lafferty v. Riel*, 495 F.3d 72, 76 (3d Cir. 2007)). The New Jersey Defendants further argue that a transfer under § 1406 is

16

improper because Haynes's request for a transfer "is not substantiated by the facts and is not grounded on any precedential case law." *Id.*

While the parties focused their arguments on the transfer-of-venue provisions of 28 U.S.C. § 1404 and 28 U.S.C. § 1406, we find that the proper statutory authority for a transfer in this case comes from 28 U.S.C. § 1631, which states that when a federal court determines that it lacks jurisdiction, "the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed . . . ." 28 U.S.C. § 1631; *see also Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 224 ("In the first place, the statutory provision applicable in these circumstances is arguably not 28 U.S.C. § 1406(a), but rather 28 U.S.C. § 1631, which governs transfer when there is 'a want of jurisdiction.'" (citing *Fed. Home Loan Bank of Bos. v. Moody's Corp.*, 821 F.3d 102, 114 (1st Cir. 2016)). "[S]ection 1631 permits transfer for lack of in personam jurisdiction." *D'Jamoos*, 566 F.3d at 107 (citing *Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 218 n.9 (3d Cir. 2002)).

Section 1631 allows a court to transfer "all or only part of an action." *Id.* at 110 (citing *Miller v. United States*, 753 F.2d 270, 275-76 (3d Cir. 1985). "[W]here a case could have been brought against some defendants in the transferee district, the claims against those defendants may be severed and transferred while the

claims against the remaining defendants, for whom transfer would not be proper, are retained." *Id.* (citing *White v. ABCO Eng'g Corp.*, 199 F.3d 140, 144 (3d Cir. 1999)). A transfer under § 1631 requires (1) that the transfer is in the interest of justice and (2) that the action could have been brought in the transferee court. 28 U.S.C. § 1631. A finding that the action could have been brought in the transferee court requires a prima facie showing that the transferee court could exercise jurisdiction over the matter. *D'Jamoos*, 566 F.3d at 107.

 Here, we find that transfer to the District of New Jersey would be in the interest of justice because Haynes has potentially actionable claims against the New Jersey Defendants for their alleged provision of inadequate medical care. We also conclude that Haynes has made a prima facie showing that the District of New Jersey could exercise jurisdiction over the claims against the New Jersey Defendants. It is clear from the face of the complaint that a federal court can exercise subject matter jurisdiction over the claims against the New Jersey Defendants because Haynes has alleged deliberate indifference to a serious medical need. It is also clear from the face of the complaint that a court in New Jersey could exercise personal jurisdiction over the New Jersey Defendants since all of them work in New Jersey and all the events giving rise to the claims against them occurred in New Jersey. Accordingly, because a transfer is in the interest of justice and the District of New Jersey could have exercised jurisdiction over the

claims against the New Jersey Defendants, we recommend that those claims be severed and transferred to the District of New Jersey.

## IV. Recommendation.

For the foregoing reasons, we find that the court may not exercise personal jurisdiction over defendants Lanigan, Johnson, Nwachukwi, Blessing, and University Correctional and recommend that all claims against those defendants be severed and transferred to the United States District Court for the District of New Jersey.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall

19

witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this **6th** day of **May, 2019**.

*S/Susan E. Schwab*
Susan E. Schwab
Chief United States Magistrate Judge